## J.I. KISLAK MORTGAGE SERVICING CORP., a Florida corp., Plaintiff-Appellee,

v.

## HARLEM SAVINGS BANK, a savings bank chartered by the State of New York, Defendant-Appellant.

No. 83-5513.

United States Court of Appeals, Eleventh Circuit.

Aug. 13, 1984.

Blackwell, Walker, Gray, Powers, Flick & Hoehl, David M. Rogero, Miami, Fla., for defendant-appellant.

Fine, Jacobson, Block, Klein, Colan & Simon, P.A., Mitchell R. Bloomberg, Miami, Fla., for plaintiff-appellee.

Before RONEY and HILL, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

This is an appeal by defendant-appellant Harlem Savings Bank[1] ("Harlem") from a judgment in the United States District Court for the Southern District of Florida declaring that Harlem could not, without committing a breach of contract, cancel a mortgage servicing arrangement it had entered with plaintiff-appellee J.I. Kislak Mortgage Servicing Corp. ("Kislak"). We find no error in the district court's findings of fact and conclusions of law. Therefore, we affirm.

In 1963, Harlem's predecessor, the Central Savings Bank ("Central"), entered into an agreement with Kislak under which Central purchased a large number of mortgages from Kislak, and in turn Kislak agreed to service those mortgages pursuant to a written agreement. The 1963 agreement provided for cancellation of the servicing contract by Central upon 30 days notice. The agreement also specified that it was a New York contract governed by New York law.

In 1979, and in 1980, Central (which became Harlem through a merger in 1981), negotiated with Kislak for servicing of approximately 7,000 mortgages owned by Central. In order to obtain the servicing contract on those mortgages, Kislak agreed to service some free, and many at a reduced rate, particularly in the early years of the servicing contract. Following both the 1979 and 1980 negotiations, Central sent letters to Kislak essentially confirming Kislak's acceptance of the mortgages for servicing. Those letters also stated that the servicing would be performed "under the servicing agreement that we have with you on all the other FHA/VA single family Home loans," and indicated that the various servicing fees were set forth in an enclosure. The "servicing agreement" referred to in the letters was the 1963 contract.

Sometime in 1982, Harlem sought to cancel the 1979 and 1980 agreements. Kislak refused to honor Harlem's request that Kislak surrender all mortgages and related documents covered by the 1979 and 1980 agreements to Harlem. Rather, Kislak initiated this action seeking a declaratory judgment that the 1979 and 1980 agreements were noncancellable.

Three officers of Kislak testified at trial. They explained that Kislak incurred approximately $400,000 in start-up expenses and lost profits (due to the early year discounts offered by Kislak to obtain the servicing contract) to service the 1979 and 1980 mortgages. The Kislak officers stated that because of the large start-up expenses associated with the Central mortgages, Central orally agreed in 1980 that the servicing of all the new mortgages would be noncancellable. Additionally, the Kislak executive testified that Kislak acceded to a cancellation provision in the 1963 agreement only because Kislak made an immediate profit upon the sale of the mortgages to Central, and because the start-up costs for servicing the mortgages were negligible since Kislak had already been servicing those mortgages for itself.

No one testified for Harlem at trial. Rather, Harlem chose to rely primarily on documentary evidence, particularly the 1979 and 1980 letters it sent to Kislak confirming the negotiations that had taken place in those years. Harlem contended

---

1. Subsequent to the filing of this suit Harlem Savings Bank changed its name to Apple Bank for Savings.

that the 1979 and 1980 letters represented final and complete written contracts incorporating all of the terms of the 1963 agreement, including the cancellation provision. Kislak, however, contended that the reference to the 1963 servicing agreement in Central's letters confirming the 1979 and 1980 agreements simply meant that Kislak would process the mortgages under the mechanics (*e.g.*, use of escrow accounts, duties of collection, remittance, etc.) set up in the 1963 agreement.

Relying on the testimony of Kislak's officers, the district court found that the effect of the 1979 and 1980 negotiations between Kislak and Central was two-fold: First, the parties orally entered into new servicing agreements that were noncancellable. Second, the 1979–1980 negotiations modified the 1963 agreement to make it noncancellable with respect to the servicing rights purchased by Kislak in 1979–80. In other words, the district court agreed, implicitly, with Kislak's position that the parties had agreed in 1979–80 that only the portions of the 1963 agreement governing mechanics of the servicing arrangement were applicable to the new servicing agreement. The district court also rejected Harlem's contentions that under New York law an oral modification of the 1963 agreement would violate the statute of frauds and that testimony regarding the oral negotiations for the 1979 and 1980 agreements violated the parol evidence rule.

On appeal, Harlem raises one issue, which is whether the trial court erred "in entering a final judgment against Harlem declaring that the 1979 and 1980 mortgage servicing agreements ... were non-cancellable by Harlem."

As our recital of the facts has shown the district court's findings were supported by ample evidence, including testimony from several Kislak executives. Harlem chose not to provide its own testimony regarding the 1979–80 negotiations, but instead relied on its argument that two letters referring to the 1963 agreement constituted complete and final contracts themselves, into which every term of the 1963 agreement was incorporated. We have examined those letters and find them to be, at most, memoranda confirming the existence of oral negotiations. Therefore, the district court was correct in rejecting Harlem's position at trial. Additionally, we are satisfied with the district court's conclusion that the references to the 1963 agreement in the 1979–80 letters simply meant that the parties would use the same mechanics for servicing the new mortgages that they had used in the past. Accordingly, after a careful review of the record in this case, we hold that none of the district court's findings of fact were clearly erroneous.

Furthermore, we are not impressed with Harlem's contentions that the district court erroneously interpreted or applied New York law. Therefore, we hold that the district court was correct in entering a final judgment declaring that the 1979 and 1980 agreements were noncancellable.

AFFIRMED.